UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOBAC C.F.S. CORPORATION,

    Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY and DOES 1 THROUGH 20, inclusive,

    Defendants.

No. C 04-4812 MHP

**MEMORANDUM AND ORDER**
**Re: Cross-Motions for Partial Summary Judgment**

    This action arises from allegations that defendant Hartford Fire Insurance Company wrongfully refused to provide coverage under a liability insurance policy issued to plaintiff Bobac C.F.S. Corporation. Now before the court are cross-motions for summary judgment concerning Hartford's failure to defend Bobac against a third party's claims in an action now pending in California state court, D&A Garments Industries, Inc. v. Bobac C.F.S Corp. et al., No. RG 04157696 (Alameda County Super. Ct. May 25, 2004). Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

    Plaintiff Bobac C.F.S. Corporation is the owner and operator of a "centralized examination station" ("CES") located adjacent to the Port of Oakland, California. As a CES operator, Bobac is licensed to accept imported goods that are within the legal custody of the United States Customs Service. See 19 C.F.R. § 118.1; Bertrand Decl. ¶ 3. The goods are then held at the CES facility for inspection by the

1  Customs Service and remain there pending a determination of their admissibility under the applicable
2  customs laws and regulations.  Bertrand Decl. ¶ 3.

3        The claims that are the subject of the instant action arise from two underlying state court
4  proceedings seeking to hold Bobac liable for the theft of imported goods from its Oakland CES facility.
5  Only one of those actions, D&A Garments Industries, Inc. v. Bobac C.F.S. Corporation et al., is at issue in
6  the motions that are now before the court.  See Def.'s Exh. A (hereinafter "D&A Compl.").  The plaintiff in
7  that action, D&A Garments, is an importer that arranged for the shipment of four containers of clothing
8  from Singapore to the Port of Oakland in July 2003.  On August 12, 2003, the Customs Service inspected
9  the shipment and ordered that it be detained pending confirmation that the declared country of origin of the
10 goods was accurate.  See Def.'s Exhs. C-D.  The containers were subsequently transferred to Bobac's
11 CES facility for storage and further inspection.  Def.'s Exh. E.

12       On August 28, 2003, the Customs Service notified D&A Garments' customs broker, Dynasty, that
13 the July 2003 shipment had been excluded from entry into the United States for failure to provide proof of
14 county of origin.  Def.'s Exh. G.  Consequently, the containers remained at Bobac's CES facility and
15 continued to be stored there until the night of September 23, 2003, at which time one of the containers was
16 stolen from the CES facility by unknown individuals.  Pl.'s Exhs. 10-11.  Bobac subsequently received a
17 claim from D&A Garments seeking compensation for the theft of the container, which Bobac forwarded to
18 Hartford on October 10, 2003.  Pl.'s Exhs. 18-19; Def's Exh. H.

19       On November 11, 2003, Dynasty informed Bobac that the Customs Service had granted it
20 permission to export the three remaining containers from the United States.  Bertrand Decl. ¶ 7.j.
21 On November 12, 2003, the Customs Service inspected the containers and released the goods for export.
22 Id.; Pl.'s Exh. 20.  One week later, Bobac delivered the three remaining containers to the Port of Oakland.
23 Bertrand Decl. ¶ 7.l.  However, the carrier to whom delivery was made refused to accept the containers
24 because they belonged to another company, and the goods were thus returned to Bobac's CES facility for
25 storage pending further instructions from Dynasty.  Id.; Pl.'s Exhs. 21-22.  The three containers remained at
26 the CES facility until December 2, 2003, at which time a second container was stolen by unknown
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California

individuals. Pl.'s Exh. 24. Bobac again received a claim for compensation from D&A Garments, which it again forwarded to Hartford. Def's Exh. J.

Bobac now claims coverage under a warehouseman's legal liability insurance policy issued by defendant Hartford Fire Insurance Company and providing coverage during the period from February 1, 2003 to February 1, 2004. See generally Def.'s Exh. B at BOB 81-85 (hereinafter "Hartford Policy").[1] Pursuant to that policy, Hartford is required to indemnify Bobac for liability arising from the loss of "Covered Property," which is defined, subject to a number of limitations and exclusions, as "tangible personal property of others in [Bobac's] care, custody, or control as a warehouseman, while located on the 'premises' listed in the Declarations or Schedule." Hartford Policy ¶ A.1. Those listed premises include Bobac's Oakland CES facility. Def.'s Exh. B at BOB 15-20. In addition, the warehouseman's policy provides that Hartford has the right and duty to defend any suit seeking damages within the scope of its coverage. Hartford Policy ¶ A.

On December 17, 2003, Hartford informed Bobac of its decision to deny coverage for both of D&A Garments' claims, citing a provision of the warehouseman's policy that excludes from its definition of "Covered Property" any claims arising from the loss of "[c]ontraband or property in the course of illegal transportation or trade." Def.'s Exh. K (citing Hartford Policy ¶ A.2.j ("Property Not Covered")). Hartford reasoned that this coverage limitation applied to D&A Garments' goods because they had been detained by the Customs Service and denied entry into the United States due to a violation of trade import regulations. Id. Thus, Hartford concluded that D&A Garments' losses were not covered under the warehouseman's policy. Id.

Despite warning Hartford that D&A Garments had threatened legal action if its claims were not paid, Bobac's subsequent efforts to obtain reversal of this decision were unavailing. See Pl.'s Exhs. 29-34.[2] On May 25, 2004, D&A Garments made good on its threat and filed an action against Bobac in Alameda County Superior Court seeking compensation for losses arising from the theft of the two containers. See generally D&A Compl. Bobac retained its own counsel in the matter on July 13, 2004, having apparently failed to tender its defense to Hartford, and continues to retain counsel in the ongoing state court proceedings. See Bertrand Decl. ¶ 8.j.

On October 6, 2004, Bobac filed an action in Alameda County Superior Court against Hartford and various Doe defendants seeking damages for Hartford's failure to defend and indemnify it against D&A Garments' claims. See Notice of Removal, Exh. A ¶ 6. The complaint also makes similar allegations with respect to the claims in Urgent Gear, Inc. v. Bobac C.F.S. Corp., No. RG 0414456 (Alameda County Super. Ct. Mar. 5, 2004) (hereinafter "the Urgent Gear action"), another case that was filed against Bobac in Alameda County Superior Court but has since been settled. Id.; Pl.'s First Am. Compl. (hereinafter "FAC") ¶ 6.

Hartford subsequently removed Bobac's state court action to this court, and Bobac filed an amended complaint on April 1, 2005, asserting jurisdiction based on diversity of citizenship. Bobac's amended complaint pleads causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. Based on the claims, Bobac seeks compensatory damages for losses arising from the D&A Garments and Urgent Gear actions as well as punitive damages and attorneys' fees. In addition, Bobac requests a judicial declaration that Hartford is contractually obligated to defend it against D&A Garments' claims.

On April 25, 2005, Bobac and Hartford filed cross-motions for partial summary judgment. The parties' motions focus on whether Hartford has a duty to provide a defense in the D&A Garments action. Bobac contends that it does, asserting that Hartford has erred in interpreting the "contraband or illegal trade" provision of the warehouseman's policy to foreclose any potential for coverage of D&A Garments' claimed loss. Hartford disputes this assertion and also moves for summary judgment on Bobac's claims for bad faith and fraud. In addition, Hartford seeks summary judgment that it is not liable for punitive damages. The following memorandum and order addresses the issues raised by the parties' motions.

4

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute involving a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. On the other hand, where the moving party bears the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991)).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). However, the court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion, Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

DISCUSSION

I.   Duty to Defend

The primary issue raised by the parties' cross-motions for summary judgment is whether Hartford has a duty to defend the claims that have been asserted against Bobac in the D&A Garments action. In undertaking this analysis, the court, applying California law, must begin with the principle that "a liability

5

insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993) (citing Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966)). To establish a duty to defend, the insured need only prove "the existence of a potential for coverage, while the insurer must establish the absence of any such potential." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993) (original emphasis omitted). In other words, "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Id. (original emphasis omitted). In making this determination, the insurer may rely upon the facts alleged in the underlying complaint as well as upon facts extrinsic to the complaint but otherwise known to it. Swain v. California Cas. Ins. Co., 99 Cal. App. 4th 1, 8 (2002); Barnett v. Fireman's Fund Ins. Co., 90 Cal. App. 4th 500, 510 (2001).

Here, the facts giving rise to the claims on the Hartford policy are undisputed in all material respects: specifically, the parties agree that the imported clothing stolen from Bobac's CES facility was excluded from entry into the United States based on its owner's failure to comply with trade import regulations. See Def.'s Exh. G. However, Bobac and Hartford part company in their assessment of whether such a violation of trade import regulations is sufficient to bring D&A Garments' claims squarely within the policy provision that excludes from coverage any claim for the loss of "[c]ontraband or property in the course of illegal transportation or trade." Hartford Policy ¶ A.2.j. The interpretation of the disputed provision is a question of law and is thus appropriate for resolution on a motion for summary judgment. See Pilimai v. Farmers Ins. Exch. Co., 127 Cal. App. 4th 1093, __, 26 Cal. Rptr. 3d 383, 389 (2005); see also Brucia v. Hartford Accident & Indem., 307 F. Supp. 2d 1079, 1082 (N.D. Cal. 2003) (Armstrong, J.) (citation omitted).

In interpreting an insurance contract under California law, it is axiomatic that policy provisions must be construed "in their ordinary and popular sense, unless the contracting parties applied special or technical meanings to particular terms." Watts Indus., Inc. v. Zurich Am. Ins. Co., 121 Cal. App. 4th 1029, 1038 (2004) (citing Cal. Civ. Code §§ 1636, 1639 and AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 821-822 (1990)). If the ordinary lay meaning of a policy provision is unambiguous, the court's inquiry ends there, for it is that ordinary meaning that determines the parties' rights and obligations under the contract.

AIU, 51 Cal. 3d at 822; Penn-America Ins. Co. v. Mike's Tailoring, 125 Cal. App. 4th 884, 889 (2005). On the other hand, an ambiguous policy provision must be "construed in the sense the insurer believed [that] the insured understood the provision at the time the contract was formed." Penn-American, 125 Cal. App. 4th at 889 (citing AIU, 51 Cal. 3d at 822). Finally, if the court still cannot determine the meaning of the disputed policy provision after undertaking this second step of the inquiry, it must resolve any ambiguity that remains against the party who created it, which in the context of an insurance policy is almost invariably the insurer. See id.

Applying these principles to the policy provision at issue here, there is nothing in the record to suggest that the parties intended the disputed "contraband or illegal trade" provision to have a special or technical meaning. Consequently, the court looks to the contract language to determine if the meaning that a lay person would ascribe to the provision is unambiguous. See AIU, 51 Cal. 3d at 822. It does not undertake this inquiry in the abstract, however, but rather seeks to determine whether there is "uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated." Penn-American, 125 Cal. App. 4th at 889 (quoting National Auto. & Cas. Ins. Co. v. Contreras, 193 Cal .App. 3d 831, 835 (1987)). Here, at least with respect to the second container of goods stolen from Bobac's CES facility on December 2, 2003, it is apparent that no such uncertainty is present. There is no dispute that the Customs Service inspected D&A Garments' goods on November 12, 2003 and released them for export from the United States on the same date. Bertrand Decl. ¶ 7.j; Pl.'s Exh. 20. Thus, when the second container was stolen approximately three weeks later, it was being stored in anticipation of being reexported with the Custom Service's approval. See Bertrand Decl. ¶ 7.j-l. Under such circumstances, the D& A Garments' goods could hardly be considered to have been "property in the course of illegal transport or trade," given that the process of transporting them for export had been approved by an agency of the United States government. Nor could the goods have reasonably been considered "contraband" within the meaning of the policy limitation at issue. Indeed, if anything, "contraband" has a narrower meaning than merely "illegal," connoting activity that is *malum in se* rather than the sort of technical, *malum prohibitum* violation of customs regulations at issue here.[3] Thus, based on the ordinary and popular meaning of the "contraband or illegal trade" limitation in Hartford's policy, the

court is compelled to conclude that any loss arising from the December 2, 2003 theft of D&A Garments' container falls outside the scope of that limitation and thus gives rise to a potential for coverage under the policy.[4]

The legal status of the containers at the time that the first theft occurred on September 23, 2003 is admittedly less clear, although Bobac nevertheless has a strong argument that interpreting the Hartford Policy's "contraband or illegal trade" limitation to encompass technical violations of customs regulations would be contrary to its reasonable expectations at the time it purchased the policy. Regardless, the court need not reach the issue of whether a potential for coverage exists based on the September 2003 theft for the purpose of adjudicating the instant motions, as California courts have made clear that an insurer's duty to defend extends to all claims in an action seeking damages for any potentially covered claim. See Buss v. Superior Court, 16 Cal. 4th 35, 48-49 (1997); see also Brucia, 307 F. Supp. 2d at 1083 (citation omitted) ("If the insurer owes a duty to defend, to fulfill its duty to defend, the insurer must defend immediately and it must defend entirely."). The court therefore holds that Hartford has a duty to defend Bobac against the claims in the D&A Garments action and grants Bobac's motion for summary judgment on that issue.

## II.   Bad Faith

Having concluded that Hartford is contractually obligated to provide Bobac with a defense against D&A Garments' claims, the court must also consider whether Hartford may be held liable on the tort claims pleaded in Bobac's complaint. The court first addresses Bobac's claim for breach of the covenant of good faith and fair dealing.

"It has long been recognized in California that 'there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (quoting Comunale v. Traders & Gen. Ins. Co., 50 Cal. 2d 654, 658 (1958)) (original alteration omitted). Although ordinarily compensation for breach of the implied covenant is limited to contract rather than tort remedies, "an exception to this general rule has developed in the context of insurance contracts where, for a variety of policy reasons, courts have held that an insurer's breach of the implied covenant will

8

1 provide the basis for an action in tort." Id. (quoting Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684
2 (1988)) (original alterations omitted).

3       That being the case, it is nonetheless true that "[t]he mistaken or erroneous withholding of policy
4 benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law,
5 does not expose the insurer to bad faith liability." Chateau Chamberay Homeowners Ass'n v. Associated
6 Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001) (citations omitted). "Thus, before an insurer can be found
7 to have acted tortiously (i.e., in bad faith)[] for its delay or denial in the payment of policy benefits, it must
8 be shown that the insurer acted unreasonably or without proper cause." Id. (Dalrymple v. United Servs.
9 Auto. Ass'n, 40 Cal. App. 4th 497, 520 (1995), and Opsal v. United Servs. Auto. Assn., 2 Cal. App. 4th
10 1197, 1205 (1991)). Furthermore, while an insured's refusal to defend an insured against a potentially
11 covered claim can also create tort liability, such liability will arise only where the policy interpretation that
12 led to that decision was both erroneous and unreasonable. Woodliff v. California Ins. Guar. Ass'n, 110
13 Cal. App. 4th 1690, 1708 n.15 (2003); Campbell v. Superior Court, 44 Cal. App. 4th 1308, 1319-21
14 (1996). This inquiry, although a question of fact, may be resolved as a matter of law when the relevant
15 evidence is undisputed and only one reasonable inference can be drawn from the facts in the record.
16 Brizuela v. Calfarm Ins. Co., 116 Cal. App. 4th 578, 588 (2004) (citing West v. State Farm Fire & Cas.
17 Co., 868 F.2d 348, 350 (9th Cir. 1989)).

18       Applying this standard to the case at bar, the court has recognized that the claims in the D&A
19 Garments action at least give rise to a potential for coverage under the Hartford policy. However,
20 California courts have made clear that the denial of insurance coverage cannot rise to the level of a breach
21 of the covenant of good faith and fair dealing "where there is a genuine issue as to the insurer's liability
22 under the policy for the claim asserted by the insured." Chateau Chamberay Homeowners Ass'n, 90 Cal.
23 App. 4th at 347 (citing Dalrymple, 40 Cal. App. 4th at 520, and Opsal, 2 Cal. App. 4th at 1205-06). In
24 its dealings with Bobac, Hartford consistently advanced the position that the goods imported by D&A
25 Garments became "contraband" or "property in the course of illegal transportation or trade" from the
26 moment that they were excluded from the United States by the Customs Service and that they remained so
27 regardless of subsequent attempts to reexport the goods lawfully. See Def.'s Exhs. K-M. It thus
28

9

concluded that it had no obligation to cover D&A Garments' claimed losses under the warehouseman's policy. Id.

Bobac argues that this conclusion is unreasonable in light of the California Supreme Court's decision Safeco Insurance Co. v Robert S., 26 Cal. 4th 758 (2001). The underlying claims on the homeowners liability policy at issue in Robert S. arose from an incident in which the policyholders' teenage son accidentally shot and killed his friend. Id. at 761. The son was subsequently convicted of involuntary manslaughter in juvenile court, and the insurer sought to invoke an "illegal acts" exclusion in the homeowners policy to deny coverage for wrongful death claims against the boy and his parents, arguing that the exclusion applied to accidental as well as intentional conduct. Id. at 762. The court agreed with the insurer's interpretation of the policy provision, observing that any violation of the duty of care—whether civil or criminal—is a violation of the law and therefore an illegal act. Id. at 764. But according to the court, this proved too much: as properly interpreted, the policy's "illegal acts" exclusion would deny coverage for even ordinary acts of negligence, thereby rending the policy's liability coverage "practically meaningless." Id. at 764-66. Accordingly, the court held the exclusion to be unenforceable. Id. at 766.

Citing Robert S., Bobac accuses Hartford of unreasonably ignoring "directly applicable" California Supreme Court precedent in interpreting the "contraband or illegal trade" limitation in its policy. Pl.'s Opp'n at 23. However, as the Robert S. court made clear, its holding rested upon California Civil Code § 1653, which provides that "[w]ords in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." Id.; see Robert S., 26 Cal. 4th at 766. Robert S. thus stands for the uncontroversial proposition that the purchaser of a liability insurance policy cannot be deprived of coverage for all acts of negligence for which he or she may be held liable. That does not prohibit an insurer from limiting its liability for certain categories of losses, including those relating to the loss of "contraband or property in the course of illegal trade or transportation." Such a limitation on covered losses simply does not vitiate coverage to such an extent as to be "inconsistent with the nature" of a liability insurance policy, see Cal. Civ. Code § 1653, and is thus entirely consistent with the holding of Robert S.

10

That being said, it may nonetheless be the case that Hartford erred in applying the policy limitation at issue to exclude coverage for D&A Garments' claims.  However, it is the reasonableness rather than the correctness of Hartford's decision that is presently before the court.  In the absence of any authority to the contrary, it cannot be seriously disputed that Hartford has advanced a reasonable interpretation of the "contraband or illegal trade" limitation of the warehouseman's policy throughout its dealings with Bobac.  The court therefore holds that Hartford's decision to deny coverage cannot be the basis for the imposition of tort liability.[5]

With respect to Hartford's duty to defend, the reasonableness of its refusal to defend Bobac against the claims in the D&A Garments action is more suspect, given that its obligation to provide such a defense extends to potentially covered claims as well those that actually fall within the scope of the policy's coverage.  See Montrose, 6 Cal. 4th at 300.  However, under California law, an insured's failure to comply with a "notice and cooperation" clause in an insurance policy has been held to bar the insured's subsequent claims for breach of the covenant of good faith and fair dealing.  See California Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 58 (1985) (citing Paulfrey v. Blue Chip Stamps, 150 Cal. App. 3d 187, 200 (1983)).[6]  The warehouseman's policy at issue here imposes a number of obligations on the insured in the event of a "suit" against it, including the requirement that Hartford receive "prompt written notice" of the suit and "copies of any demands, notices, summonses or legal papers" that the insured receives.  Hartford Policy ¶¶ E.2.a(2), E.2.a(3)(a).  Although Bobac speculates that one of its former employees contacted Hartford to inform it that the D&A Garments action had been filed, see Bertrand Decl. ¶ 8.h; Daley Decl. ¶¶ 9-10, Hartford correctly points out that neither of declarants on whom Bobac relies for the purpose of establishing this fact has personal knowledge of any action that might have been taken to notify Hartford of the D&A Garments action.  Thus, in the absence of any competent evidence that Bobac complied with the notice requirements of the warehouseman's policy, its claim for bad faith failure to defend is legally insufficient.  Accordingly, having already concluded that Hartford's decision to deny coverage was as a mater of law not unreasonable, the court grants Hartford's motion for summary judgment as to Bobac's claim for breach of the covenant of good faith and fair dealing.

III.    Fraud

11

1    Hartford next seeks summary judgment with respect to Bobac's cause of action for fraud. Under
2  California law, a fraud claim requires proof of five elements: (1) misrepresentation; (2) knowledge of falsity
3  (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. Lazar v. Superior
4  Court, 12 Cal. 4th 631, 638 (1996) (citing 5 Witkin, Summary of California Law § 676, at 778 (9th ed.
5  1988)). Actionable misrepresentations include any promise "made without any intention of preforming it."
6  Cal. Civ. Code § 1710(4). The "essence" of such a claim for "promissory fraud" is "the existence of an
7  intent at the time of the promise not to perform it." Building Permit Consultants, Inc. v. Mazur, 122 Cal.
8  App. 4th 1400, 1414 (2004) (citation and original emphasis omitted).

9    Here, Bobac contends that Hartford issued the warehouseman's policy with the intent to interpret
10 the policy's "contraband or illegal trade" limitation to exclude from coverage any goods refused entry into
11 the United States for any reason and to deny coverage accordingly. Pl.'s FAC ¶¶ 19-20. According to
12 Bobac, this amounts to a fraudulent misrepresentation regarding the scope of the policy's coverage.
13 However, the fact that an insurer interprets the express terms of a written insurance contract in its own
14 interest is not sufficient to establish an intent to defraud its insured. Indeed, so long as the insurer's
15 interpretation of a disputed policy provision is objectively reasonable, it is "entitled to argue for whatever
16 interpretation of the law and policy language most benefit[s] its own interests." Morris v. Paul Revere Life
17 Ins. Co., 109 Cal. App. 4th 966, 974 (2003). As noted above, the position that Hartford has taken with
18 respect to the exclusionary language at issue is reasonable, if not necessarily correct. Thus, because Bobac
19 has failed to introduce any evidence that Hartford acted with the requisite fraudulent intent, the court grants
20 Hartford's motion for summary judgment as to Bobac's fraud claim.

21 IV.   Punitive Damages

22    The final issue raised by Hartford's motion is whether Bobac may seek punitive damages. In light
23 of the court's conclusion that Bobac's bad faith and fraud claims fail as a matter of law, its entitlement to
24 damages rests solely upon its cause of action for breach of contract. Under California law, punitive
25 damages cannot be recovered in routine breach of contract cases. Cal. Civ. Code § 3294; Power
26 Standards Lab, Inc. v. Federal Express Corp., 127 Cal. App. 4th 1039, __, 26 Cal. Rptr. 3d 202, 208

(2005) (citing 1 Witkin, Summary of California Law Contracts § 820, at 739 (9th ed. 1987)).  The court therefore grants Hartford's motion for summary judgment on this issue.

CONCLUSION

    For the reasons stated above, plaintiff's motion for partial summary judgment is GRANTED, and defendant's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

    IT IS SO ORDERED.

Dated: May 18, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. Although Bobac objects to the admissibility of Defendant's Exhibits A through H for lack of foundation, Jeffrey Lewiston, Hartford's counsel and the sponsor of those documents, attests that they have been produced by Bobac pursuant to Federal Rule of Civil Procedure 26. Lewiston Decl. ¶ 2. Moreover, to the extent that those exhibits are relevant to the instant motions, Bobac's own appendix include copies of identical documents. Accordingly, the court denies this objection. As for its other "evidentiary objections," Bobac purports to object to various passages of Hartford's memorandum of points and authorities. However, because Hartford's brief is not evidence, its contents cannot be the subject of an evidentiary objection. Thus, these "objections" serve no purpose and need not be considered by the court. Bobac's remaining objections are denied as moot.

2. Hartford's Federal Rule of Evidence 403 objections to the admissibility of Plaintiff's Exhibits 29 through 33 are denied. In addition, with the exception of its objections to certain passages of the declarations of Jacqualine Bertrand and John M. Daley, which are discussed below, see infra at 11-12, Hartford's remaining evidentiary objections are denied as moot.

3. Furthermore, despite Hartford's assertion that federal customs laws in general and 19 U.S.C. § 1595a in particular treat excluded merchandise as "contraband," it inexplicably fails to cite the definition of contraband in section 1595a. That definition, which is borrowed from 49 U.S.C. § 80302(a), provides a laundry list of articles ranging from narcotic drugs to counterfeit record labels that the customs laws deem to be "contraband," none of which bears any resemblance whatsoever to the excluded clothing at issue in the instant action. This definition supports rather than refutes Bobac's argument that D&A Garments' goods are not contraband.

4. In light of the conclusion, the court need not address how it would resolve any ambiguity in disputed policy provision, although it should be noted that there is nothing in the record to suggest that the ordinary practice of resolving such ambiguity in favor of the insured would not be appropriate in the case at bar. Indeed, while defendant cites numerous customs regulations in support of the proposition that D&A Garments' goods were in the course of illegal trade at the time that they were stolen from Bobac's CES facility, there is no evidence that the parties relied on these regulations in entering into the contract of insurance at issue here. Accordingly, such evidence is of little, if any, relevance to the meaning that the parties assigned to the disputed coverage limitation.

5. While it may be true that the reasonableness of including D&A Garments' goods within the definition of "contraband" is a closer call, the court need not reach the issue because the exclusionary language of the Hartford policy is written in the disjunctive. Furthermore, although Bobac asserts that Hartford acted unreasonably in refusing to consider the possibility that D&A Garments' losses might be covered under the "Property Choice" policy that it issued to Bobac as well as under its warehouseman's policy, the Property Choice policy also excludes from coverage any claim arising from the loss of "[c]ontraband, or property in the course of illegal transportation or trade." Def.'s Exh. B at BOB 35 (Property Choice Policy ¶ A.8.c). Thus, the court's conclusion that Hartford did not act unreasonably in denying coverage under the warehouseman's policy necessarily implies that it was not unreasonable to deny coverage under the Property Choice policy.

6. The notice required to maintain a claim for bad faith breach of the duty to defend must be distinguished from that required to establish the insurer's contractual liability. For purposes of the latter, California courts have recognized that an insured's tender of defense "can be either formal or constructive." Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App. 4th 966, 979 n.16 (2000) (citations omitted). Consequently, if an insurer has notice of facts that would lead a reasonable person to inquire as to whether a duty to defend exists but nonetheless erroneously fails to defend, the insurer will be held liable for breach of contact. See California Shoppers, 175 Cal. App. 3d at 37.

It can not be seriously disputed that this more relaxed notice requirement is met in the instant action. Indeed, on December 23, 2003, Bobac's insurance broker warned Hartford that D&A Garments intended to file suit unless its claims were paid and thus urged Hartford to reconsider its decision to deny coverage for those claims. Pl.'s Exh. 29. After Hartford refused to do so, Bobac filed a request for assistance with the California Department of Insurance on May 24, 2004, seeking, *inter alia*, Hartford's consent "to protect [Bobac] in the event that the importer [i.e., D&A Garments] files a claim or a lawsuit—whenever that might occur." Pl.'s Exh. 33. Hartford subsequently acknowledged the filing of the May 2004 request but continued to maintain that no coverage existed under the warehouseman's policy. Pl.'s Exh. 34; Def.'s Exh. M. Taken together, the parties' correspondence clearly establishes that Hartford was aware that D&A Garments intended to sue Bobac. This is sufficient to have provided Hartford with constructive notice of D&A Garments' subsequent lawsuit. Such a showing, although not enough to give rise to tort liability, permits Bobac to pursue a claim for breach of contract.

In any event, Hartford's counsel admitted at the hearing held on the instant motions that her client would have denied any tender of defense that Bobac submitted with respect to D&A Garments' claims. As the California Supreme Court made clear in Clemmer v. Hartford Insurance Co., 22 Cal. 3d 865 (1978), an insurer accused of breaching its contractual duty to defend may not raise a defense based on the insured's failure to comply with a policy's notice requirements unless it can demonstrate that it suffered prejudice from the insured's failure to provide the required notice. Id. at 881-85; see also Select Ins. Co. v. Superior Court, 226 Cal. App. 3d 631, 637-38 (1990). In light of counsel's admission, it is apparent that Hartford is unable to make such a showing here. Bobac was therefore relieved of its contractual obligation to provide Hartford with notice of the D&A Garments action prior to the date on which that action was filed.